```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                     TAMPA DIVISION
```

BARRY GONZALEZ,

       Plaintiff,

v.                         Case No.  8:13-cv-2098-T-33EAJ

TZ INSURANCE SOLUTIONS, LLC,

       Defendant.
_____/

**ORDER**

This matter comes before the Court pursuant to Plaintiff Barry Gonzalez's Motion for Conditional Certification and Order Permitting Court-Supervised Notice to Potential Opt-In Plaintiffs (Doc. # 39), which was filed on February 28, 2013. Defendant TZ Insurance Solutions, LLC filed a Response in Opposition to the Motion on March 14, 2014. (Doc. # 41).  For the reasons that follow, the Motion is granted.

**I.**    **Background**

Gonzalez worked for TZ Insurance as a "sales specialist" from approximately June 6, 2011, through September 15, 2011, in TZ Insurance's Tampa, Florida location. (Gonzalez Decl. Doc. # 39-2 at ¶¶ 4-5, 7).  Gonzalez was paid by the hour and was eligible for overtime pay. (Id. at ¶ 6).  While Gonzalez's schedule typically reflected that he "worked 5 days a week from 9:00 a.m. to 6:00 p.m.," Gonzalez indicated that he usually worked three to five extra hours per week without

compensation. (Id. at ¶¶ 10-18). Gonzalez explains that he was required by his supervisor to show up at least 30 minutes early for his shifts, that he attended mandatory sales meetings daily before clocking in, and that he was expected to open multiple computer programs and review his email "including campaign information" all before clocking in for the day. (Id.). In addition, after logging off at the end of the day, Gonzalez was required to close computer applications and answer phone calls. (Id. at ¶¶ 13, 18). Gonzalez indicates that "sales specialists in the Tampa call center performed similar job duties regardless of whether they were in health, life, property and casualty insurance, etc." (Id. at ¶ 19).

In addition to Gonzalez, other former TZ Insurance employees, have come forward with declarations indicating that they were required to work "off the clock" for TZ insurance, resulting in uncompensated overtime hours. See, e.g., (Diggs-Himmel Decl. Doc. # 39-3 at ¶ 13; Hennessey Decl. Doc. # 39-4 at ¶ 14). TZ Insurance has locations in Tampa and Fort Myers, Florida, as well as in Charlotte, South Carolina. (Doc. # 39 at 3).[1]

---

[1] TZ Insurance also suggests that it has a call center in Dublin, Ohio. (Doc. # 41 at 14, n. 2).

On August 14, 2013, Gonzalez filed his Complaint against TZ Insurance seeking the payment of overtime compensation pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), as well as other relief. (Doc. # 1). At this juncture, Gonzalez seeks an order conditionally certifying this case as a collective action consisting of "all current and former sales agents who worked for Defendant at any time within the last three (3) years who were not paid for all hours worked." (Doc. # 39 at 1).

Among other arguments, TZ Insurance asserts that conditional certification is not appropriate because Gonzalez has not demonstrated that there are other employees who desire to opt into the litigation that are similarly situated with respect to their job requirements and pay arrangements. As will be discussed below, the Court finds that Gonzalez meets the low threshold required for conditional certification.

## II. Legal Standard

The Fair Labor Standards Act expressly permits collective actions against employers accused of violating the FLSA's mandatory overtime provisions. See 29 U.S.C. § 216(b) ("[a]n action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."). In

3

prospective collective actions brought pursuant to Section 216(b), potential plaintiffs must affirmatively opt into the collective action. Id.  ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

The Eleventh Circuit has recommended a two-tiered procedure for district courts to follow in determining whether to certify a collective action under § 216(b). Cameron-Grant v. Maxim Healthcare Servs., Inc., 347 F.3d 1240, 1242 (11th Cir. 2003)(citing Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001)).  The first tier, known as the notice stage, is relevant here.  "At the notice stage, the district court makes a decision--usually based on the pleadings and any affidavits which have been submitted-- whether notice of the action should be given to potential class members." Id. at 1243.

The Court must determine whether there are other employees who desire to opt-in and whether those employees are similarly situated. Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1258 (11th Cir. 2008); Dybach v. State of Fla. Dep't of Corrections, 942 F.2d 1562, 1567-68 (11th Cir. 1991). This determination is made using a "fairly lenient standard."

4

Hipp, 252 F.3d at 1218. Gonzalez bears the burden of showing a reasonable basis for the contention that there are other similarly situated employees who desire to join in the litigation. Dybach, 942 F.2d at 1567-68.

### III. Conditional Certification Analysis

#### A. Other Individuals Seek to Join the Suit

The record reflects that five other individuals (Rhonda Diggs-Himmel, Justin Jennings, Jamie Doshier, Harry Lebowitz, and Robert Hennessey) have filed consent documents reflecting their desire to join in the action. (Doc. ## 23, 32).

Although there is no magic number requirement for the notice stage, the presence of five opt-in plaintiffs, each having filed a declaration describing their working conditions and their desire to join in this suit, satisfies the Court that others desire to join in the action. See, e.g., Robbins-Pagel v. WM. F. Puckett, Inc., No. 6:05-cv-1582-Orl-31DAB, 2006 U.S. Dist. LEXIS 85253 (M.D. Fla. Nov. 22, 2006)(finding that three affidavits alleging claims of unpaid overtime was sufficient to establish that other individuals were interested in joining the action); Dieujuste v. R.J. Elec., Inc., No. 7-80272, 2007 U.S. Dist. LEXIS 100531 (S.D. Fla. Aug. 21, 2007)(granting conditional certification when two individuals sought overtime wages against the same employer and each filed

5

a declaration); Pendlebury v. Starbucks Coffee, Co., No. 04-cv-80521, 2005 U.S. Dist. LEXIS 574 (S.D. Fla. Jan. 3, 2005)(granting conditional certification upon consideration of four affidavits from store managers complaining of improper exemption from overtime eligibility).  The Court finds that Gonzalez has met his burden of demonstrating that other employees seek to join the action.

    **B.**    **The Employees are Substantially Similar**

As explained in Morgan, the plaintiff's burden of showing a "reasonable basis" for the claim that "similarly situated" employees seek to join the action is "not particularly stringent, fairly lenient, flexible, not heavy, and less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b)." 551 F.3d at 1260-61 (internal citations omitted).

For purposes of defining the "similarly situated class" pursuant to § 216(b), Gonzalez need only show that the defined class is comprised of representatives who are similarly situated to Gonzalez with respect to their "job requirements and pay provisions." See Dybach, 942 F.2d at 1568.  In support of his Conditional Certification Motion, Gonzalez offers his declaration explaining that TZ Insurance required him to arrive at work 30 minutes early every day, and required him to

6

perform work both before clocking in and after clocking out. (Gonzalez Decl. Doc. # 39-2 at ¶¶ 14-18). Gonzalez also indicated that "there were over 400 employees" at TZ Insurance's Tampa location. (Id. at ¶ 8). Other TZ Insurance sales employees echo Gonzalez's declaration statements. For example, Rhonda Diggs-Himmel, a former Tampa TZ Insurance sales specialist, states:

> TZ required me and other employees in my position to work off the clock both before and after our work shifts. I was required to arrive to work up to 30 minutes prior to my shift in order to turn on my computer, load multiple computer programs, read emails and memorandums. We also had daily pre-shift meetings to discuss our daily tasks. I also spent time closing computer applications after I logged off at the end of the day.

(Diggs-Himmel Decl. Doc. # 39-3 at ¶¶ 13-16). Likewise, Robert Hennessey, a former Fort Myers TZ Insurance sales specialist indicated that he was required "to work off the clock both before and after [] work shifts," "was required to arrive to work up to 30 minutes prior to [his] shift," and "had daily pre-shift meetings." (Hennessey Decl. Doc. # 39-4 at ¶¶ 14-16). Hennessey also indicated that "[t]here were approximately seventy-five to one hundred sales specialists at the Fort Myers call center." (Id. at ¶ 9). Former TZ Insurance sales specialists Harry Lebowitz and Jamie Doshier also filed declarations mirroring the contention that TZ

7

Insurance employed hundreds of sales specialists and required them to work off the clock both before and after their shifts. (Doc. ## 39-5, 39-6).

These detailed declarations confirm that TZ Insurance employed hundreds of similarly situated sales employees, that all of these employees were paid an hourly rate, worked similar hours, and were eligible for overtime compensation. Each declarant also indicates that TZ Insurance failed to provide proper compensation due to the policy of requiring sales employees to work off the clock on a daily basis.

TZ Insurance contends that Gonzalez and the opt-in Plaintiffs are not similarly situated because they do not share the same job title, were not supervised by the same manager, and did not work at the same location. In addition, TZ Insurance has filed competing affidavits by present TZ Insurance employees challenging Gonzalez's allegations that TZ Insurance required its sales employees to work "off the clock." However, the evidence TZ Insurance proffers exceeds by far this Court's limited inquiry at the notice stage of the conditional certification process.

The court was faced with a similar situation in <u>Simpkins v. Pulte Home Corporation</u>, No. 6:08-cv-130-Orl-19DAB, 2008 U.S. Dist. LEXIS 64270 (M.D. Fla. Aug. 21, 2008). There,

8

Pulte classified all superintendents as exempt from overtime and Simpkins, a superintendent, filed a FLSA action. Id. at *10-11. Simpkins sought conditional certification. Id. Similar to TZ Insurance's strategy, "Pulte present[ed] a mass of evidence in opposition to Simpkins collection of declarations," including evidence showing that superintendents had varying levels of education, training, and licensure; worked on different types of projects; had varying amounts of discretion; and worked flexible hours. Id. at *14.

There, the Court noted that "the evidence Pulte presents goes far beyond the scope of this Court's review at the first stage of the certification process." Id. at *15. The Simpkins court granted conditional certification after finding that Simpkins demonstrated a reasonable basis to conclude that other similarly situated superintendents wished to join the action.

Following the sound reasoning of Simpkins, this Court determines that Gonzalez and the opt-in Plaintiffs have shown that there are similarly situated sales agents who seek to join this action, and TZ Insurance's arguments arrayed against conditional certification are prematurely asserted. An analogous situation arose in Reyes. There, a group of retail account executives sought conditional certification of a FLSA

9

action. AT&T countered with a deluge of competing affidavits, including numerous affidavits by current retail account executives claiming that they were all properly compensated. The court declined AT&T's invitation to engage in a "battle" of the affidavits. 801 F. Supp. 2d at 1358. This Court similarly considers, but is not convinced by, TZ Insurance's affidavits, including affidavits filed by current sales employees indicating that they never perform off the clock work. See Creely v. HCR Manorcare, Inc., 789 F. Supp. 2d 819, 839 (N.D. Ohio 2011)("[T]his Court is not swayed by [defendant's] submission of thirty-five 'happy camper' affidavits. . . . [T]he Court's function at this stage of conditional certification is not to perform a detailed review of individual facts from employees hand-picked by [defendant]. Those questions of breadth and manageability of the class are left until the second stage analysis following the receipt of forms from all opt-in plaintiffs.").

Nor do TZ Insurance's affidavits pinpointing variations in the sales representatives' individual titles, schedules, and practices convince the Court that conditional certification is unwarranted. See Vondriska v. Premier Mort. Funding, Inc., 564 F. Supp. 2d 1330, 1335 (M.D. Fla. 2007) ("Variations in specific duties, job locations, working hours,

or the availability of various defenses are examples of factual issues that are not considered at the notice stage."); Morgan, 551 F.3d at 1261-62 (courts should consider at the second stage "the various defenses available to defendant[s] [that] appear to be individual to each plaintiff."); Pendlebury, 2005 U.S. Dist. LEXIS 574, at *10 (granting conditional certification and refusing to consider factual dispute raised by defendant at the conditional notification stage where plaintiff offered affidavits establishing a similarly situated class).

Thus, to the extent TZ Insurance tenders competing affidavits, the Court declines to engage in a credibility analysis. The Court finds that the sales representatives are substantially similar for the notice stage of conditional certification.

In granting conditional certification, the Court is also persuaded by the line of cases in which courts have conditionally certified collective actions based on allegations that the defendant employer failed to pay employees for time spent logging into and out of computers and software programs prior to and after work shifts. See, e.g., Keller v. HSNI, LLC, No. 8:10-cv-1198-RAL-EAJ (Doc. # 33, Oct. 28, 2010); Fantauzzi v. Agora Mktg. Sol., Inc., No. 8:10-cv-

11

513-T-26TGW, 2010 WL 2220246 (M.D. Fla. June 2, 2010); <u>Fisher v. Mich. Bell Tel. Co.</u>, 665 F. Supp. 2d 819 (E.D. Mich. 2009); <u>Gipson v. SW Bell Tel. Co.</u>, No. 08-cv-2017, 2009 WL 1044941 (D. Kan. Apr. 20, 2009); <u>Russell v. Ill. Bell Tel. Co.</u>, 575 F. Supp. 2d 930 (N.D. Ill. 2008).

### C. **Geographical Scope of the Litigation**

TZ Insurance correctly argues that Gonzalez and the opt-in Plaintiffs have only provided statements about the conditions at TZ Insurance's Tampa and Fort Myers locations. TZ Insurance requests that any order granting conditional certification should be limited to those locations. The Court agrees. There is no evidence before the Court bearing upon the manner in which TZ Insurance's employees outside the state of Florida are compensated, nor have Gonzalez and the opt-in Plaintiffs made any supported allegations that non-Florida TZ Insurance locations follow the same procedures as the Florida locations. The Court determines that it is appropriate to limit the breadth of this action to TZ Insurance's Florida locations, which are located in Tampa and Fort Myers.

### D. **Content of Class Notice**

Gonzalez's proposed form of Class Notice (Doc. # 39-8) is before the Court. TZ Insurance raises a number concerns with respect to the Class Notice, including (1) that it does not

provide information about or contact information for defense counsel; (2) that it lacks information concerning opt-in Plaintiffs' obligations and rights; and (3) that the class definition includes "sales agents" instead of "sales specialists."

### 1. **Defense Counsel and "Opt In" Information**

Court-authorized notice in a class action context helps to prevent "misleading communications" and ensures that the notice is "timely, accurate, and informative." Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 171 (1989). The Court agrees with TZ Insurance that Defense Counsel's name and contact information should be included in the notice in the interest of full disclosure to the notice recipients. The Court directs the parties to work together to revise the Class Notice to include that missing information. The Court also agrees that Gonzalez's proposed Class Notice does not fully advise the notice recipients (1) that if they opt in, they may be required to appear for trial and (2) if Plaintiffs are unsuccessful, TZ Insurance may attempt to recover its costs from the potential class members. See Sealy v. Keiser Sch. Inc., No. 11-cv-61426, 2011 U.S. Dist. LEXIS 152369, at *13 (S.D. Fla. Nov. 8, 2011)(finding that the proposed class notice failed to fully advise potential class members of the

13

consequences of opting into the suit, including that defendant may attempt to recover its costs from the potential class members if the lawsuit is unsuccessful and that the potential class members may be required to appear for trial). The Court directs counsel to jointly revise the Class Notice to more adequately reflect the consequences for opt-in Plaintiffs.

### 2. **Class Definition and "Sales Agents"**

TZ Insurance also contends that the class definition is flawed because it describes the relevant employees as "sales agents" while Gonzalez and the opt-in Plaintiffs describe themselves as "sales specialists." The Court determines that Gonzalez's class definition, including use of the term "sales agents" to describe the target employees, is straight forward and accurate.

TZ Insurance's website repeatedly refers to its sales employees as "agents." For example, under the heading "Sales Center Solutions," TZ Insurance indicates: "We have over 500 licensed Life, Health and Property & Casualty agents in three state-of-the-art Sales Center facilities. Our agents are licensed in all 50 states." (Doc. # 39-1 at 4). In addition, the affidavits TZ Insurance has submitted in opposition to Gonzalez's Motion for Conditional Certification also refer to the sales employees at issue by different titles. For

14

instance, current TZ Insurance employee James Cordero refers to the relevant sales employees as "Sales Professionals" and indicates that "there is no such position as a 'sales specialist'" at TZ Insurance. (Cordero Aff. Doc. # 41-1 at ¶ 3). Justin Adsit, the Vice President of Sales for TZ Insurance, refers to the relevant employees as "sales employees" and "sales agents." (Adsit Aff. Doc. # 41-2 at ¶¶ 3, 6).

The fact that Gonzalez described himself as a "sales specialist" in his declaration does not require this Court to conform the class definition to match his declaration statement. Gonzalez's declaration also described a sales workforce in Tampa with over 400 "sales representatives." (Gonzalez Decl. Doc. # 39-2 at ¶ 16). The Court determines that the term "sales agents" adequately describes the target sales employees at issue.

Having addressed the issues raised with respect to the Class Notice and the scope of the action, the Court directs counsel for TZ Insurance and counsel for Gonzalez to confer regarding the proposed Class Notice. The parties are directed to file an agreed form of Class Notice for the Court's

15

approval by April 7, 2014.[2]

### E. **Dissemination of the Class Notice**

Gonzalez asserts that the Class Notice should be sent via first class mail and via email. Gonzalez also contends that the Class Notice should "be posted at each of Defendant's locations at which sales agents are employed to further the broad remedial purpose of the FLSA." (Doc. # 39 at 19). TZ Insurance agrees that the Class Notice should be disseminated via first class mail and to private email addresses (not TZ Insurance email addresses), but objects to the posting of Class Notice at any of its call centers.

The Court determines that it is appropriate to furnish Class Notice via first class mail and via non-TZ Insurance email. The Court denies without prejudice Gonzalez's request that Class Notice be posted at TZ Insurance locations. The Court notes that other courts have required that Class Notice be posted at the workplace only after a showing that a defendant has failed to cooperate in the collective action process. See, e.g., Sutton v. Singh, No. 6:12-cv-1254-Orl-28TBS, 2013 U.S. Dist. LEXIS 81162, at *12-13 (M.D. Fla. May

---

[2] In their discussions, the parties should internally resolve their dispute regarding the duration of the opt-in period and other timing issues.

2, 2013)(finding the plaintiffs' request for posting of class notice at the workplace to be "premature" because the plaintiffs did not show that the defendant "produced an inadequate list of names and/or addresses to [p]laintiffs, thereby necessitating some other form of notice."). In this case, the Court directs TZ Insurance to produce to Gonzalez by April 7, 2014, a list containing the names, last known addresses, and non-TZ Insurance email addresses of the putative class members, which includes sales agents employed (or formerly employed) in a Florida location within the last three years. The Court may reconsider its determination regarding posting Class Notice in the workplace if Gonzalez shows that TZ Insurance failed to timely and adequately provide the contact information described above.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiff Barry Gonzalez's Motion for Conditional Certification and Order Permitting Court-Supervised Notice to Potential Opt-In Plaintiffs (Doc. # 39) is **GRANTED** as described herein.

(2) The parties are directed to file a Jointly Proposed Notice to the Class by April 7, 2014.

(3) TZ Insurance is directed to produce to Gonzalez by April

17

7, 2014, a list containing the names, last known addresses, and email addresses of putative class members as described above.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 26th day of March, 2014.

*Virginia M. Hernandez Covington*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record

18